UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>378 N. Main Avenue<br>Tucson, AZ 85701,<br><br>*Plaintiff*,<br><br>v.<br><br>DAVID BERNHARDT, *in his official capacity as Secretary of the U.S. Department of the Interior*,<br>1849 C Street NW<br>Washington, DC 20240,<br><br>*and*<br><br>U.S. FISH AND WILDLIFE SERVICE,<br>1849 C Street NW<br>Washington, DC 20240<br><br>*Defendants*. | Case No. 19-2282 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. Emperor penguins are among the world's most recognizable and beloved birds. Made famous by the 2005 documentary *March of the Penguins* and the threats they face from climate change, emperor penguins are unique in both appearance and life history.

2. Standing four feet tall, emperor penguins are the largest and most ice-adapted of the world's penguins. They are the only animals that breed in the harsh Antarctic winter. Females lay a single egg at traditional breeding colony sites on shore-bound sea ice in early winter, and the males spend two months incubating the egg on their feet, huddling together for warmth in a large group that circulates to limit the exposure of any individual at the huddle's

1

exterior. Emperor penguins rely on sea-ice covered Southern Ocean waters for their primary food source: fish and tiny crustaceans called Antarctic krill.

3. Yet these remarkable and resilient birds now face a potentially insurmountable threat: anthropogenic climate change. The effects of climate change—including warming land and ocean temperatures; sea-ice loss and early sea-ice breakup; and the collapse of ice sheets and ice shelves—have already caused population declines. A 2019 study documented the catastrophic breeding failure of the world's second-largest emperor penguin colony during the past three years, following record low sea-ice extent and early sea-ice breakup.

4. Global warming is accelerating, presenting an existential threat to emperor penguins. A 2017 study projects that, due to global warming, emperor penguins could experience a global population decline between 40 and 99 percent over three generations by the century's end.

5. Recognizing this serious threat, on November 28, 2011, the Center for Biological Diversity ("the Center" or "Plaintiff") petitioned to list the emperor penguin as a threatened or endangered species under the U.S. Endangered Species Act ("ESA").

6. The ESA requires the Secretary of the Interior, David Bernhardt, through the U.S. Fish and Wildlife Service (collectively "the Service" or "Defendants"), to determine if listing is warranted within 12 months of receiving a petition. 16 U.S.C. § 1533(b)(3)(B).

7. The Service has failed to make the required 12-month finding as of the date of this Complaint.

8. As such, the Service is violating both the ESA and Administrative Procedure Act ("APA"). Through this Complaint, the Center seeks a declaratory judgment and injunctive relief

to compel the Service to issue a 12-month finding on the Center's petition by a date certain, as well as fees and costs associated with the litigation.

## JURISDICTION AND VENUE

9.This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (actions arising under the laws of the United States), 28 U.S.C. § 1346 (actions against the United States), 16 U.S.C. § 1540(c) and (g)(1)(C) (actions arising under the ESA's citizen suit provision), and 5 U.S.C. § 702 (actions for those adversely affected by agency action under the APA).

10.This action arises under the ESA, 16 U.S.C. §§ 1531–1544, and the APA, 5 U.S.C. §§ 551–559; 701–706, and the requested relief is authorized under 28 U.S.C. § 2201 (declaratory relief), 28 U.S.C. § 2202 (injunctive relief), 16 U.S.C. § 1540(g) (ESA), 5 U.S.C. § 706 (APA), and the Court's equitable powers.

11.The ESA and APA provide waivers of the federal government's sovereign immunity. 16 U.S.C. § 1540(g); 5 U.S.C. § 702.

12.The Center provided formal notice to the Service of its intent to file suit under the ESA on May 2, 2019, more than 60 days prior to filing this Complaint, consistent with the ESA's statutory requirements. 16 U.S.C. § 1540(g)(2).

13.Defendant David Bernhardt, Secretary of the Interior, received a copy of Plaintiff's notice letter via certified mail on May 7, 2019. Defendant U.S. Fish and Wildlife Service received a copy of Plaintiff's notice letter, directed to Ms. Margaret Everson, Principal Deputy Director Exercising the Authority of the Director of the U.S. Fish and Wildlife Service, via certified mail on May 7, 2019.

14. Venue in this Court is proper under 28 U.S.C. § 1391(e) and 16 U.S.C. § 1540(g)(3)(A) because Defendants reside and are headquartered in this judicial district and a substantial part of the events, omissions, and violations giving rise to the claim occurred in this district.

**PARTIES**

15. Plaintiff Center for Biological Diversity ("the Center") is a 501(c)(3) nonprofit corporation incorporated in the State of California. The Center maintains offices across the country, including in Washington, DC; California; Arizona; Oregon; Florida; and Washington State, and in Baja California Sur, Mexico. The Center works through science and environmental law to advocate for the protection of endangered, threatened, and rare species and their habitats both in the United States and abroad. The Center has nearly 70,000 active members and around 1.4 million online activists.

16. The Center and its members have a strong interest in protecting marine wildlife and wildlife threatened by climate change, both in the United States and abroad. Through its Oceans and International programs, the Center works to protect marine mammals, seabirds, fish, and other marine creatures that are threatened by unsustainable or harmful fishing practices, trade, plastics, ocean acidification, anthropogenic climate change, food limitations, and other sources of habitat loss and degradation. The Center's Climate Law Institute wages legal and grassroots campaigns to protect people, wildlife, and ecosystems from climate change and the dirty and dangerous fossil fuel industry.

17. The Center has a long history of advocating for penguin protection, including for the protection of emperor penguins and their habitat. The Center filed a petition to list 12 penguin species, including the emperor penguin, under the ESA in 2006; the Service

subsequently listed seven of those species but declined to list the emperor penguin. The Center has also advocated for stricter regulation of the Antarctic krill fishery, and in 2003, the Center's advocacy led to the closure of the U.S. longline fishery for Patagonia toothfish in Southern Ocean waters.

18. The Center and its members derive professional, scientific, educational, recreational, conservation, aesthetic, and other benefits from emperor penguins in the wild. The Center has members who visited and have concrete plans to return to emperor penguin habitat in Antarctica and the Southern Ocean. For example, Mr. Frans Lanting is a Center member and a preeminent wildlife photographer, author, speaker, and environmentalist who has contributed more than 30 feature articles to *National Geographic* magazine. Mr. Lanting has visited the Antarctic continent seven times, and he has viewed and photographed emperor penguins on two of these trips. His 1999 book, *Penguin*, contains over 30 of his full-color images of emperor penguins, in addition to other penguin species. Mr. Lanting will be returning to Antarctica and emperor penguin habitat in January 2020 and again in early 2021 to photograph wildlife, including penguins, and to document the effects of climate change on the Antarctic ecosystem.

19. Center members Bruce and Sue Sakashita plan to visit Antarctica on a wildlife tour through National Geographic/Lindblad Expeditions. Their tour is from November 7 to 29, 2019, and it includes spending several days on and around the Antarctic Peninsula and surrounding islands. They will sail through the Lemaire Channel and explore the region by ship, zodiac, and on foot to enjoy Antarctica's rich habitat and wildlife. While on the expedition, they plan to attempt to view several penguin species, including emperor penguins. They will visit penguin habitat to observe the penguins, take photographs, and learn about emperor penguins and the species' threats.

20. Defendants' violations have directly, adversely, and irreparably harmed the Center and its members' interests in emperor penguins. This harm is ongoing and will continue unless and until this Court provides the relief prayed for in this Complaint.

21. The relief sought in this Complaint would redress Plaintiff's injuries. ESA listing would provide emperor penguins with important protections and benefits. The ESA and the Service's regulations generally prohibit the import, export, and take of listed species within U.S. jurisdiction or on the high seas, as well as the sale of listed species in interstate or foreign commerce. ESA listing also increases awareness of listed species and their threats, stimulates research efforts to address conservation needs, and increases funding for in-situ conservation of species in their range countries. Under the ESA, the Service provides financial assistance for programs to conserve listed species in foreign countries, encourages conservation programs for such species, and offers other related assistance, such as personnel and training.

22. Additionally, section 7 of the ESA requires all U.S. agencies to: (1) carry out programs to conserve threatened and endangered species, and (2) consult with the Service when the agency authorizes, funds, or carries out an action, so as to ensure it is not likely to jeopardize a listed species' continued existence. The U.S. government regularly authorizes, funds, and carries out actions in the United States and in the waters surrounding Antarctica that may affect emperor penguins. For example, the National Marine Fisheries Service ("NMFS") authorizes U.S. scientific research for the catch of Antarctic krill and issues permits for the importation of krill under the Antarctic Marine Living Resources Convention Act ("AMLRCA"). 50 C.F.R. §§ 300.103(d); 300.104(a). AMLRCA also authorizes NMFS to issue permits for U.S. vessels to harvest krill in Antarctic waters. *Id.* § 300.107(a). NMFS also issues permits that authorize U.S. entities to conduct research activities, including seismic surveys, in Antarctic waters.

23. Defendant David Bernhardt is the Secretary of the U.S. Department of the Interior. In this capacity, Secretary Bernhardt directs all business of the Department of the Interior. Pursuant to the ESA, Secretary Bernhardt is responsible for determining whether species are endangered or threatened and for promulgating regulations to list and protect those species. In his official capacity, Secretary Bernhardt is responsible for the violations alleged in this Complaint.

24. Defendant U.S. Fish and Wildlife Service ("the Service") is an agency within the Department of the Interior. The Secretary of the Interior has delegated to the Service the authority to administer the ESA for many species of wildlife, 50 C.F.R. § 402.01(b), including the responsibility of complying with the ESA's mandatory listing deadlines. This authority encompasses proposed and final listing decisions for the emperor penguin.

## FACTUAL AND STATUTORY BACKGROUND

### A.  Emperor Penguins

25. Emperor penguins (*Aptenodytes forsteri*) are the largest and tallest of the extant penguin species, reaching four feet in height. With black heads, white chests, and a patch of yellow at their necks, they are one of the most recognizable bird species in the world.

26. Emperor penguins are also the most ice-adapted of the world's penguin species, inhabiting Antarctica and areas of the surrounding Southern Ocean.

27. Emperor penguins breed almost exclusively on fast ice (i.e., shore-bound sea ice) in traditional breeding colonies. A 2017 paper documented 54 breeding colonies with circumpolar distribution around Antarctica.

28. The emperor penguin is the only species to breed in Antarctica during its winter months. Males and females congregate in traditional colonies in April or May—the beginning of

the Antarctic winter—once the fast ice reforms and is thick enough to support thousands of penguins. Males and females court and select mates, and females lay a single egg in May or June. Males then incubate the egg balanced on top of their feet for two months, while females return to the sea to forage. The males fast during this period and can lose up to 45 percent of their body weight. Incubating males also form large groups that huddle together for warmth and move collectively by taking small steps every 30-60 seconds, which results in a coordinated, large-scale reorganization of the huddle to limit the exposure of any individual on the exterior.

29. Females return to the colony near the time of hatching, providing the first food to the new chick. At this point the male, who has fasted for four months since arriving on the breeding grounds, transfers responsibility for the chick to the female and walks up to 100 kilometers over the fast ice, which has grown and expanded away from the colony site during the cold winter months, to open water to forage. Over the next five months the male and female alternate tending to the chick and foraging until December, the peak of the Antarctic summer, when the chick develops its adult feathers and is large enough to fledge. When the fast ice breaks up in December and January, chicks enter the water and spend about four years at sea before returning to the colony to continue the breeding cycle.

30. With Antarctica's extreme temperatures and winds, chick survival is low in some years, with many chicks lost to starvation, predation, cold, and entrapment in tide cracks in the ice. Strong winds and higher than normal average temperatures may also cause the fast ice to breakup early, resulting in the loss of any chicks that have not yet acquired their adult feathers and are unready to enter the frigid water.

31. Emperor penguins mainly consume krill, fish, and small cephalopods, searching for their prey in ice-free polynyas (i.e., open patches in the sea ice) or on the open Southern

Ocean. Individuals have been recorded diving to depths of 400 to 500 meters and traveling up to 1000 kilometers in a single foraging trip.

32. Sea ice provides an important resting platform for emperor penguins between foraging dives. Sea ice is also critical for supporting the emperor penguin's key prey species, as the primary food sources for fish and krill—algae and plankton—live on the underside of sea ice. Thus diminishing sea ice in the Southern Ocean makes foraging more difficult and also threatens the emperor penguin's food supply.

33. The emperor penguin is in danger of extinction in the wild within this century.

34. The primary threat to the emperor penguins' survival is anthropogenic climate change. The emperor penguin depends on Antarctic sea ice for most of the year for breeding and foraging. The effects of global warming—including surface and ocean warming; sea-ice loss and early sea-ice breakup; and the collapse of ice sheets and ice shelves—are already degrading the penguins' Antarctic habitat.

35. As a result, some emperor penguin populations have already disappeared and others are suffering large-scale declines. A 2019 study documented the catastrophic breeding failure of the world's second largest emperor penguin colony during the past three years, following record low sea-ice extent and early sea-ice breakup, both well-known effects of global warming.

36. Global warming is accelerating, resulting in escalating sea-ice loss; surface and ocean warming; and the further collapse of Antarctic ice shelves. These global warming impacts will cause serious harms to emperor penguin habitat. Absent large-scale cuts in carbon pollution, a 2017 study projects that emperor penguins could experience a global population decline of 40 to 99 percent over the next three generations, by the end of this century.

37. Adding to these harms, rising ocean temperatures and melting sea ice in the Southern Ocean encircling Antarctica have also diminished the availability of krill, a key food source for emperor penguins. Industrial krill fisheries and ocean acidification resulting from the ocean's absorption of carbon dioxide further threaten the penguins' food supply.

38. Immediate and bold action must be taken to preserve this iconic and much-beloved penguin species.

### B. The Endangered Species Act

39. Recognizing that endangered and threatened species are of "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people," Congress enacted the ESA in 1973 "to provide a program for the conservation of" these species and "a means whereby the ecosystems upon which [the] species depend may be conserved." 16 U.S.C. § 1531(a)(3), (b).

40. To this end, section 4 of the ESA requires the Secretary of the Interior to determine whether any species is "endangered" or "threatened," and if so, list the species under the ESA. 16 U.S.C. § 1533(a), (c). The Secretary has delegated its administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

41. A "species" is "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16). An endangered species is any species that "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A threatened species is any species that "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

42. The Service must list a species if it is endangered or threatened due to: "(A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." 16 U.S.C. § 1533(a)(1). The Service must make listing determinations "solely on the basis of the best available scientific and commercial information regarding a species' status, without reference to possible economic or other impacts of such determination." 50 C.F.R. § 424.11(b); 16 U.S.C. § 1533(b)(1)(A).

43. Once a species is listed under the ESA, prescribed protections apply.

44. Section 7(a) of the ESA requires that each federal agency "shall . . . utilize [its] authorities [to] carry[ ] out programs for the conservation" of listed threatened and endangered species. 16 U.S.C. § 1536(a)(1). The same section also requires that each federal agency "shall" consult with the relevant expert agency (for penguins, the U.S. Fish and Wildlife Service) to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence" of a listed species. *Id.* § 1536(a)(2).

45. Section 9 of the ESA generally prohibits "any person subject to the jurisdiction of the United States" from "tak[ing]" any endangered species "within the United States or the territorial sea of the United States" or "upon the high seas." 16 U.S.C. § 1538(a)(1)(B), (C). The "high seas" are "all waters seaward of the territorial sea of the United States, except waters officially recognized by the United States as the territorial sea of another country." 50 C.F.R. § 17.21(c). Section 9 also prohibits the import, export, transport, and sale of any endangered species. 16 U.S.C. § 1538(a)(1)(A), (E), (F).

46. Under section 4(d) of the ESA, the Service must issue regulations to conserve threatened species and may extend the prohibitions in section 9 to threatened species. 16 U.S.C. § 1533(d). By regulation, the Service has generally extended the prohibitions in section 9 to threatened species. 50 C.F.R. § 17.31(a).

47. The ESA also authorizes the Service to provide financial and other assistance to develop programs to conserve foreign ESA-listed species. 16 U.S.C. § 1537(a). The ESA further authorizes and directs the Service through the U.S. Secretary of State to encourage foreign nations to conserve listed species and enter the United States into treaties and other agreements to provide for such conservation. *Id.* § 1537(b)(1), (2).

48. To ensure the timely protection of species that are at risk of extinction, Congress established a detailed and time-bound process whereby citizens may petition the Service to list a species as endangered or threatened and the Service must respond.

49. Specifically, upon receiving a listing petition, the Service must "[t]o the maximum extent practicable, within 90-days" make an initial "finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). The finding is referred to as a 90-day finding.

50. If the Service determines that listing may be warranted, it must conduct a full scientific review of the species' status. 16 U.S.C. § 1533(b)(3)(A). Then, within 12 months of receiving the petition, the Service must make one of three findings: (1) listing is "warranted;" (2) listing is "not warranted;" or (3) listing is "warranted but . . . precluded" by other pending listing proposals, provided certain requirements are met. *Id.* § 1533(b)(3)(B). The finding is referred to as a 12-month finding.

51.     If the Service's 12-month finding concludes that listing is warranted and not precluded, the agency must promptly propose a regulation to list the species as endangered or threatened in the Federal Register for public comment. 16 U.S.C. § 1533(b)(3)(B)(ii). Within one year of publication of the proposed regulation, the ESA requires the Service to render its final determination on the proposal. *Id.* § 1533(b)(6)(A). At such time, the Service must either list the species, withdraw the proposed listing rule, or, if there is substantial disagreement about scientific data, delay a final determination for up to six months to solicit additional scientific information. *Id.* § 1533(b)(6)(A)(i), (B)(i).

52.     The ESA's strict protections do not safeguard species at risk of extinction until the Service lists the species as endangered or threatened. Accordingly, it is critical that the Service strictly comply with the Act's listing procedures and deadlines to ensure species are listed in a timely manner.

    **C.    The Center's Petition to List the Emperor Penguin**

53.     Recognizing the perils penguins face due to climate change, the Center submitted a petition in 2006 to list 12 penguin species, including the emperor penguin, under the ESA.

54.     In 2008, the Service issued a 12-month finding on four of the penguin species and found that the emperor penguin was not then "threatened or endangered in any portion of its range or likely to become so in the foreseeable future." 73 Fed. Reg. 77,264, 77,300 (Dec. 18, 2008). The Service concluded that, at the time, there was insufficient evidence to indicate climate change was affecting the emperor penguin's habitat through changes in temperature or sea-ice extent, or that those effects were likely to threaten the species in the foreseeable future.

55.     On November 28, 2011, the Center submitted a new petition to list the emperor penguin under the ESA. The petition presented new data and research: (1) demonstrating the

substantial effect global warming has had on the penguin's Antarctic habitat; (2) projecting future effects including increasing sea temperatures, changes in sea-ice extent and duration, and declines in prey availability; and (3) documenting the related observed and projected population declines that threaten the species' survival. The petition demonstrates that the emperor penguin warrants listing as threatened or endangered under the ESA.

56. On January 22, 2014, the Service issued its belated but positive 90-day finding on the Center's 2011 petition, finding the petition "presents substantial scientific or commercial information indicating that [listing] may be warranted for the emperor penguin." 79 Fed. Reg. 3559, 3561 (Jan. 22, 2014).

57. Nearly eight years have passed since the Center filed its 2011 petition to list the emperor penguin under the ESA. However, the Service has not issued a 12-month finding on the petition to date.

58. The Service's 12-month finding is 80 months late, as of the date this Complaint's filing.

## CLAIM FOR RELIEF

### Violation of ESA/APA:

### Failure to Make a 12-Month Finding on Emperor Penguin Petition

59. Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth below.

60. The Service's failure to make the statutorily required 12-month finding on the Center's petition to list the emperor penguin as threatened or endangered violates the Endangered Species Act, 16 U.S.C. § 1533(b)(3)(B), and/or constitutes agency action

"unlawfully withheld or unreasonably delayed" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(1).

**REQUEST FOR RELIEF**

Plaintiff respectfully requests this Court:

A.      Declare that Defendants violated the ESA and/or APA by failing to issue a 12-month finding as to whether listing the emperor penguin is warranted;

B.      Order Defendants to issue, by a date certain, a finding as to whether listing the emperor penguin is warranted, 16 U.S.C. § 1533(b)(3)(B);

C.      Award Plaintiff its attorneys' fees and costs in this action as provided by the ESA, 16 U.S.C. § 1540(g)(4), and/or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

D.      Provide such other and further relief this Court deems just and proper.

Dated:  July 31, 2019

Respectfully submitted,

 /s/ Sarah Uhlemann
Sarah Uhlemann
DC Bar No. 501328
Center for Biological Diversity
2400 80th Street NW, #146
Seattle, WA 98117
(206) 327-2344
suhlemann@biologicaldiversity.org

Tanya M. Sanerib
DC Bar No. 473506
Center for Biological Diversity
2400 80th Street NW, #146
Seattle, WA 98117
(206) 379-7363
tsanerib@biologicaldiversity.org

*Attorneys for Plaintiff Center for Biological Diversity*